**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **DIGITAL VERIFICATION SYSTEMS, LLC,** | |
| Plaintiff, | C.A. No. 1:23-cv-00351-RP |
| v. | **JURY TRIAL DEMANDED** |
| **QUALIA LABS, INC.,** | |
| Defendant. | |

**QUALIA'S 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

I.      STAGE AND NATURE OF PROCEEDINGS ...................................................... 1

II.     SUMMARY OF THE ARGUMENT .................................................................. 1

III.    STATEMENT OF THE ISSUE ........................................................................ 2

IV.     STATEMENT OF THE FACTS ........................................................................ 2

V.      LEGAL STANDARD ...................................................................................... 4

        A. This Case Should Be Disposed of at the Pleading Stage Through Rule 12(c). . 4

        B.  The Law of 35 U.S.C. § 101. ........................................................................ 5

VI.     ARGUMENT .................................................................................................. 6

        A.  The Independent Claims of the '860 Patent Are Patent-Ineligible
            Under § 101 ............................................................................................... 6

        1.   Alice Step 1: The independent claims are directed to the abstract idea of
             incorporating information in a file to verify a document ................................. 6

        2.  Alice Step 2: The independent claims do not contain an inventive concept
            sufficient to confer patent eligibility ............................................................. 12

        A.  The dependent claims of the '860 Patent are not patent eligible. ................... 13

        B.  There are no claim construction or factual disputes preventing the Court from
            ruling on this issue at the Rule 12 stage ........................................................ 15

VII.    CONCLUSION ............................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)..........................................................................................6

*Ancora Techs. v. HTC Am., Inc.,*
908 F.3d 1343 (Fed. Cir. 2018)........................................................................11

*Appistry, Inc. v. Amazon.com, Inc.,*
195 F. Supp. 3d 1176 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v.
Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017).......................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..........................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
687 F.3d 1266 (Fed. Cir. 2012).........................................................................5

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)........................................................................15

*Bilski v. Kappos,*
561 U.S. 593 (2010).................................................................................5, 6, 14

*Bosarge v. Mississippi Bureau of Narcotics,*
796 F.3d 435 (5th Cir. 2015) ............................................................................4

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018)..........................................................................8

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014)........................................................................13

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
21 F. Supp. 3d 758 (E.D. Tex. 2014)................................................................14

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014).....................................................................7, 13

*Cuvillier v. Taylor,*
503 F.3d 397 (5th Cir. 2007) .............................................................................5

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980)..........................................................................................5

*Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*,
   855 F.3d 681 (5th Cir. 2017) ............................................................4

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)...............................................11, 13

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018).................................................9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020)......................................................11

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018).........................................................8

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
   389 F. Supp. 3d 456 (E.D. Tex. 2019) ...........................................15

*McZeal v. Louisiana*,
   No. 21-30631, 2022 WL 4078582 (5th Cir. Sept. 6, 2022) ..............4

*Morales v. Square, Inc.*,
   75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
   2015), *cert. denied*, 136 S. Ct. 1461 (2016)...................................7

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ....................7

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018).........................................................8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017).........................................................12

*Simio, LLC v. FlexSim Software Products, Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020).......................................................16

*In re TLI Commc'ns LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016).........................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)......................5

*Universal Secure Registry LLC v. Apple, Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) .............................................2, 9, 10

**Statutes**

35 U.S.C. § 101............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................4, 16

Fed. R. Civ. P. 12(c) .............................................................................................................2, 4, 6

## I.  STAGE AND NATURE OF PROCEEDINGS

On March 30, 2023, Plaintiff Digital Verification Systems, LLC ("DVS") filed this lawsuit accusing Qualia Labs, Inc. of infringing U.S. Patent No. 9,054,860. DVS accuses Qualia of infringing at least Claim 1 of the '860 Patent via its Connect Secure Closing Platform, which features an electronic signing capability. Compl. ¶ 33.

## II.  SUMMARY OF THE ARGUMENT

The idea of incorporating information into a file to authenticate a document is an abstract concept ineligible for patent protection. This concept predates computers and digital document and has been widely used on physical documents such as by affixing a seal or using a notary public. The '860 Patent's claims are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

As the '860 Patent itself explains, signing documents "to identify the provenance of the document and/or otherwise associate the document with the perspective entity" was well known and conventional. '860 Patent at 1:12-19. The '860 Patent recites exactly that activity as carried out digitally, or more specifically, "a digital verified identification system structured to facilitate authenticating and/or verifying the identity of an electronic signatory and/or verifying the identity of an electronic signatory to file and/or otherwise structured to associate an electronic file with one or more entities." '860 Patent at 1:37-41. In other words, it is a system that digitalizes the conventional practice of verifying a signatory to a document.

Additionally, the '860 Patent fails to teach the recited system with any specificity. For example, it concedes that "the digital identification module(s) of . . . the present system may include virtually **any** file, item, object, or device structured to be embedded or otherwise disposed

within an electronic file or document," and "the verification data elements of . . . the present system include **any** information or data." '860 Patent at 3:29-35, 3:55-59 (emphasis added).

Thus, the '860 Patent's applicant did not claim an unconventional system to solve the problem he identified. Nor did he claim a particular mechanism for improving computing systems. As the Federal Circuit has held, claims are directed to an abstract idea "where the claims simply recited conventional actions in a generic way [and do] not purport to improve any underlying technology." *Universal Secure Registry LLC v. Apple, Inc.*, 10 F.4th 1342, 1347 (Fed. Cir. 2021) ("*USR*") (citing *Solutran, Inv. V. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). The '860 Patent claims an abstract concept, not a specific implementation of that concept. Its claims are therefore invalid for failure to claim patent-eligible subject matter.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Qualia thus requests that the Court dismiss the Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## III.    STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the '860 Patent are directed to the abstract idea of incorporating information that associates a document to an entity to verify or authenticate the document. The '860 Patent does not include an inventive concept beyond that idea. Should the Court therefore dismiss DVS's claims pursuant to Rule 12(c)?

## IV.    STATEMENT OF THE FACTS

The '860 Patent is entitled "Digital Verified Identification System and Method." It relates to "a digital verified identification system and method . . . for verifying and/or authenticating the

identification of an entity associated with an electronic file." '840 Patent at Abstract. First, a "module generating assembly" receives "at least one verification data element" and uses it to generate a "digital identification module." *Id.* This "digital identification module" is "structured to be associated with at least one entity" and is also "capable of being disposed or embedded within at least one electronic file." *Id.* The specification of the '860 Patent admits that the recited method is a digitalization of conventional practices for authenticating documents, such as physically signing "hard copies of papers or documents . . . with a paper or other writing utensil, by one or more entities to identify the provenance of the document and/or otherwise associate the document with the respective entity," or having a "notary public or other witness" to verify or authenticate the identity of the signatory of the document. *Id.* at 1:13-22.

The '860 Patent's specification lacks specificity and does not disclose any specialized components or hardware. Instead, the specification discloses generalized descriptions of software components and the use of known file formats.  For example, "the verification data elements may include **any** indicia or data," "the digital identification module . . . may include virtually **any** file, item, object, or device structured to be embedded or otherwise disposed within an electronic file or document . . . including . . . Joint Photographic Experts Group ("JPEG") file, bitmap or pixmap file, Portable Network Graphics ("PNG") file, [or] Graphics Interchange Format ("GIF") file," "[t]he computer application may include . . . **any** program structured to create or otherwise manipulate an electronic file," "the computer application may include virtually **any** interactive file handling program and/or word processing program." '860 Patent at 2:6-9, 3:31-40, 4:66-5:1, 5:1-5:2 (emphasis added).

The '860 Patent's purported advantages include "provid[ing] a system having one or more digital identification module structured to be embedded or otherwise disposed within at least one

electronic file or document," and "the digital identification module [being] created or otherwise generated by a module generating assembly utilizing at least one verification data element corresponding to the one or more entities, such as . . . a signatory of the electronic file." *Id.* at 1:41-49. But the '860 Patent fails to teach with specificity how the modules are generated from the module generating assembly, or how the modules are embedded "or otherwise disposed" in a file, or how the "verification data element" is used by the module generating assembly.

Consequently, the alleged invention claimed in the '860 Patent amounts to nothing more than using off-the-shelf components to incorporate information relating to an entity in an electronic file to verify a document, and it does not limit how to achieve this claimed end result.

## V.   LEGAL STANDARD

### A.   This Case Should Be Disposed of at the Pleading Stage Through Rule 12(c).

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a] party may move for judgment under Rule 12(c) '[a]fter the pleadings are closed . . . but early enough not to delay trial.'" *McZeal v. Louisiana*, No. 21-30631, 2022 WL 4078582, at *3 (5th Cir. Sept. 6, 2022). In the Fifth Circuit, the standard for deciding a Rule 12(c) motion is the same as the standard for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. "Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 685 (5th Cir. 2017). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to

decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.     The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653.

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible

concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

## VI.   ARGUMENT

DVS's allegations regarding the '860 Patent should be dismissed. The claims of the '860 Patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of incorporating information relating to an entity in a file to verify a document. Further, none of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because DVS has failed to state a claim upon which relief may be granted, Qualia respectfully requests that the Court grant its motion for judgment on the pleadings and dismiss this case with prejudice. FED. R. CIV. P. 12(c).

### A.   The Independent Claims of the '860 Patent Are Patent-Ineligible Under § 101.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217. After this determination, the Court must evaluate if there is an inventive concept that amounts to "significantly more than a patent upon the ineligible concept itself." *Id.* Under any plausible reading, the claims of the '860 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of incorporating information relating to an entity in a file to verify a document. *See Alice*, 134 S. Ct. at 2356-59; *Bilski*, 561 U.S. at 611.

#### 1.   *Alice Step 1: The independent claims are directed to the abstract idea of incorporating information in a file to verify a document.*

6

Claim 1 of the '860 Patent is representative of the claims.[1] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 1 of the '860 Patent explains is incorporating information relating to an entity in a file to verify a document:

| Claim Language | Claimed Idea |
|---|---|
| 1. A digital verified identification system, comprising | |
| at least one digital identification module structured to be associated with at least one entity, | a generic module that associates with an entity |
| a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module, | an assembly that receives information and creates the module |
| said at least one digital identification module being disposable within at least one electronic file, and | the module is integrated in an electronic file |
| said at least one digital identification module comprising at least one primary component structured to at least partially associate said digital identification module with said at least one entity, wherein | module can be associated with the entity or entities |

---

[1] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The other independent claims of the '860 Patent are substantially similar and do not introduce any variations that would change the analysis because they all contain the same essential elements. For example, Claim 23 merely specifies a primary component as a "digital signature." '860 Patent at Cl. 23. Further, Claims 26 and 39 are substantially similar method claims. *Id.* at Cl. 26, 39.

| Claim Language | Claimed Idea |
|---|---|
| said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file. | the module is integrated in only one electronic file |

As seen above, the claim quickly reduces to the bare idea of integrating information associated with one entity in an electronic file. Much like the long-standing practice of hiring a notary public to confirm the identity of a signatory, this is an abstract idea ineligible for patenting. Indeed, when a notary verifies a document, the notary attaches materials to the document or file such that later recipients have evidence of the authentic and verified signature. The claim follows this same process, just in a digital form. This practice predates computers and digital documents and has evolved over the decades and even centuries. For example, long before digital documents and even the modern notary system, an official document may have received a wax seal as a way to verify the authenticity. In much the same way as the present claim, this was a process of integrating information associated with an entity into (or on) a document to verify the document. As demonstrated above, Claim 1 merely applies this process to electronic files or documents.

The abstract idea inquiry begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); *see BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018).

In the current case, Claim 1 is not directed to any specific means or method for improving technology—it is directed to the abstract idea of incorporating information relating to an entity into a file as a way to verify the document. This was not a new idea, but rather, only a way of implementing a widely used abstract idea. The applicant identified that "there is a current need in the art for a digital verified identification system structured to facilitate authenticating and/or verifying the identity of an electronic signatory to a file and/or otherwise structured to associate an electronic file with one or more entities." '860 Patent at 1:37-41. But creating a "digital identification module" that is associated with an entity, then embedding the module in a file, is a concept, not an invention, and it is thus ineligible for patent protection. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) ("The problem, however, is that the idea of a chat session separate from the original website is not an invention; it is a concept. The asserted claims of the [asserted] patent recite the concept, but not the way to implement it.").

Claim 1 is comparable to the patent that the Federal Circuit upheld as ineligible in *USR*. 10 F.4th at 1353. In *USR*, U.S. Patent No. 9,100,826 (the "'826 Patent"), entitled "Method and Apparatus for Secure Access Payment and Identification," disclosed "a system for authenticating identities of users, including a first handheld device configured to transmit authentication information and a second handheld device configured to receive the authentication information." *Id.* The specification of the '826 Patent taught an authenticating method that uses two devices: the first device, upon receiving verification information from the user, transmits a first wireless signal containing authentication information to the second device. *Id.* at 1353-54. The second device may then authenticate the first user by decrypting the authentication information and verifying the identity of the first user. *Id.* at 1354. The Federal Circuit held that the claims of the '826 Patent were directed to an abstract idea—the idea of "an electronic ID device … to (1) authenticate the

9

user based on two factors [] and (2) generate encrypted authentication information to send to the secure registry through a point-of-sale device." *Id.* at 1354. The Federal Circuit further explained that the claims were directed to an abstract idea because "the claims do not include sufficient specificity." *Id.* The '826 Patent's specification conceded that the information used for verification—like the conventional and generic "verification data element" in the '860 Patent in the current case—was conventional. *Id.*; *see* '860 Patent at 3:55-59. The Federal Circuit concluded that the '826 Patent's claims "broadly recite generic steps and results," and it was thus abstract under *Alice* Step 1. *Id.* at 1355. The claims of the '860 Patent disclose even less than the invalidated patent in *USR*. They are directed to a very similar abstract idea, and  unlike the latter, the claims of the '860 Patent do not even disclose how the "information . . . associated with at least one entity" is utilized by the system for authentication or verification purposes.

In addition, the Federal Circuit has repeatedly held that in cases involving authentication technology, "patent eligibility often turns on whether the claims provide sufficient **specificity** to constitute an improvement to computer functionality itself." *USR*, 10 F.4th at 1347 (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 907, 910-11 (Fed. Cir. 2017); *Electronic Communication Technologies, LLC v. ShoppersChoice.com LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020), *Solutran*, 931 F.3d at 1163, 1167, *Prism Techs. v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017).) Claim 1 is directed to an abstract end-result of each part of the system and lacks any of the specificity that the Federal Circuit requires to confer patent eligibility. In fact, Claim 1 only mentions its purported goal—"verification"—once in its preamble. Thus, Claim 1 lacks specificity to the extent that it does not even disclose the end-result of the system, or how the digital identification module or its incorporation into a file facilitates any steps of the verification, identification, or authentication process.

Neither does Claim 1 require a new or unconventional machine or process for "generating" the digital identification module, "associating" the module with any identity, or "disposing" the module within any file. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 1 does not describe how the desired result—verifying identity—is achieved. The mechanism to implement the idea is impermissibly unbounded in scope.

Further, Claim 1 of the '860 Patent differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method . . . specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '860 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

Further, while the claims of the '860 Patent may use technical jargon, that does not mean it teaches a technical solution. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) ("Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea."). And even if the '860 Patent were

directed to a useful idea, a patent is still invalid for lack of subject-matter eligibility when it teaches a useful abstract idea. *See Secured Mail Sols.*, 873 F.3d at 910 ("The fact that an [idea] can be used to make a process more efficient, however, does not necessarily render an abstract idea less abstract.").

The other independent claims of the '860 Patent, Claims 23, 26, and 39, fare no better under this analysis: they are directed to the same abstract idea. At bottom, the claimed advance of the independent claims is the concept of incorporating information relating to an entity in a file to verify a document. This concept is an abstract idea, not an invention, and the mere desire for the concept to be accomplished efficiently, without more, does not confer eligibility. As explained above, the other independent claims all contain the same essential elements. Accordingly, the independent claims fail the first step of the *Alice* analysis.

### 2. *Alice* **Step 2: The independent claims do not contain an inventive concept sufficient to confer patent eligibility.**

The independent claims of the '860 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using existing off-the-shelf components and well-known protocols to assign values for identifying data streams corresponding to different versions of content. As explained above, the abstract functional descriptions in the independent claims of the '860 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (holding claims failed *Alice*'s step 2 where the specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Like the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in Claim 1 "contains an 'inventive concept'

sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016) (internal citations omitted). Rather, the '860 Patent, like the claims in *Symantec*, simply disclose "generic computers performing generic functions." *Id*. at 1319.

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the independent claims of the '860 Patent does not make an otherwise abstract idea patent eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."). Claim 1 does not even require any specific or specialized technical components to achieve the end goal of the system. Further, the '860 Patent explains that the digital identification module(s) of the present system "may include virtually **any** file, item, object, or device structured to be embedded or otherwise disposed within an electronic file or document," and "the verification data elements of . . . the present system include **any** information or data." '860 Patent at 3:29-35, 3:55-59 (emphasis added). "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. There is thus no limitation in the independent claims that could be considered an inventive concept under step two of the *Alice* test.

**B.      The dependent claims of the '860 Patent are not patent eligible.**

The dependent claims of the '860 Patent add additional limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. These

limitations are simply token pre- or post-solution activity that cannot confer an inventive concept. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610; *see also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). For example, Claim 2 includes additional limitations regarding "computer application structured to embed . . . digital identification module," Claim 3 includes an additional limitation that the computer application includes an "interactive file handling program," Claim 4 includes an additional limitation of "interactive computer network," and Claim 5 includes an additional limitation requiring "a digital signature." '860 Patent at cls. 2, 3, 4, 5. Similar to independent Claim 1, the dependent claims do not include anything other than well-known steps and processes such that they fail to contain an inventive concept. Accordingly, the dependent claims suffer from the same flaws as the independent claims, despite their additional limitations, and should therefore be treated the same as the independent claims.

The dependent claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. As an example, again looking at Claim 2, the additional limitations just require a "computer application structured to embed said at least one digital identification module within the electronic file." *Id.* at cl. 2. This additional limitation relies on further generic components and adds nothing unconventional to the abstract idea. Accordingly, the dependent claims, like the independent claims, fail both steps of the *Alice* test and should be found ineligible.

**C.     There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.**

The issue of the patent eligibility of the '860 Patent is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis. Additionally, there are no factual disputes on this record. The '860 Patent does not assert any unconventional mechanism of implementing the claimed idea of integrating information associated with one entity in an electronic file. As such, this case is markedly different from *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner.

It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations

that aspects of the claims are inventive are sufficient." *Dropbox*, 815 F. App'x at 538 (internal quotations omitted).

Here, DVS's bare and implausible allegations in the complaint cannot defeat this motion; otherwise, Rule 12 would be rendered toothless against plaintiffs who plead "magic words." Compl. ¶¶ 15, 19. Patentee plaintiffs should not have the power to unilaterally declare that their claims are inventive. *See Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183, n.6 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ("Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention."). DVS's decision to include conclusory assertions in the Complaint that the '860 Patent is novel and patent eligible betrays that it is keenly aware of the claims' vulnerability. *See* Compl. ¶¶ 15-27.

The Court's ineligibility analysis should disregard DVS's bare legal conclusion about the novel aspects of its asserted patents. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). DVS's allegations in the Complaint state that the claims "comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas" and are "novel, non-obvious, unconventional, and non-routine." Compl. ¶¶ 15, 19. These are not factual allegations—they are legal conclusions in which DVS attempts to unilaterally declare its patents are directed to eligible subject matter, and should be ignored by the Court. *See Simio*, 983 F.3d at 1366 ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory."). Once DVS's conclusory legal allegations

about the novelty and inventiveness of the asserted patent are disregarded, there is nothing left to preclude a determination of ineligibility on the pleadings.

Accordingly, this issue is ripe for the Court's consideration, and the '860 Patent should be found invalid for failing to claim patent-eligible subject matter.

## VII.    CONCLUSION

For the foregoing reasons, Qualia respectfully requests that the Court dismiss DVS's claims based on the '860 Patent for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Qualia requests dismissal with prejudice.

Dated: August 28, 2023

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Neil J. McNabnay*
      Neil J. McNabnay
      mcnabnay@fr.com
      Texas Bar No. 24002583
      Ricardo J. Bonilla
      Texas Bar No. 24082704
      bonilla@fr.com
      Noel F. Chakkalakal
      Texas Bar No. 24053676
      chakkalakal@fr.com
      Rodeen Talebi
      Texas Bar No. 24103958
      talebi@fr.com
      Philip G. Brown
      pgbrown@fr.com
      Texas Bar No. 24132695

      1717 Main Street, Suite 5000
      Dallas, Texas 75201
      (214) 747-5070 (Telephone)
      (214) 747-2091 (Facsimile)

**ATTORNEYS FOR DEFENDANT**
**QUALIA LABS, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on August 28, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

      */s/ Neil J. McNabnay*
      Neil J. McNabnay